UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **TERRELL FISHER, TDCJ #02147651** § | |
| § | |
| **Plaintiff,** § | |
| § | SA-22-CV-00146-XR |
| v. § | |
| § | |
| **ROBERT M. SMITH, DDS,** § | |
| § | |
| **Defendant.** § | |

**ORDER**

Before the Court are *pro se* Plaintiff Terrell Fisher's ("Fisher") 42 U.S.C. § 1983 Civil Rights Complaints, Defendant Robert M. Smith DDS's ("Dr. Smith") Amended Motion for Summary Judgment, Fisher's responses to Dr. Smith's amended motion for summary judgment, Fisher's Motion for Summary Judgment, and Dr. Smith's response to Fisher's motion for summary judgment. (ECF Nos. 1, 32, 34, 36, 37, 43). Upon review, the Court orders Dr. Smith's Amended Motion for Summary Judgment **GRANTED**, and Fisher's Motion for Summary Judgment **DENIED**. (ECF Nos. 32, 36).

**FACTUAL AND PROCEDURAL BACKGROUND**

Records from the Texas Department of Criminal Justice ("TDCJ") show Fisher was convicted of indecency with a child by contact in McLennan County, Texas in 2017; he was sentenced to ten years' confinement. *See* Texas Department of Criminal Justice Inmate Search (last visited Dec. 20, 2022). While confined, Fisher filed this § 1983 civil rights action against Dr. Smith, who is employed as a dentist at TDCJ's Ney Unit. (ECF No. 1). Fisher alleges the doctor was deliberately indifferent to his serious medical needs by refusing to provide him with dentures. Fisher contends he began seeking dentures in 2018 and has continued to seek them through the

filing of this action. As relief, Fisher seeks unstated "compensatory" damages and injunctive relief in the form of provision of dentures.

The Court ordered service on Dr. Smith. (ECF No. 11). Dr. Smith filed an answer and a motion to dismiss. (ECF Nos. 14, 20). The Court ordered the motion to dismiss to be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 17). The Court further ordered Dr. Smith to file an amended motion for summary judgment within 30 days if he so chose.

Dr. Smith filed his amended motion for summary judgment to which he attached five exhibits. (ECF No. 32, Exhs. A–E). Exhibits A through C, which include grievances with a portion of Fisher's medical records, a litany of Fisher's medical records, and an affidavit from Billy E. Horton, DDS, who is the Dental Director for The University of Texas Medical Branch Correctional Managed Care ("UTMB/CMC"), were ordered to be filed under seal at Dr. Smith's request. (ECF Nos. 31, 33). Later, Fisher filed his own motion for summary judgment, as well as two responses to Dr. Smith's amended motion for summary judgment. (ECF Nos. 34, 36, 43). Dr. Smith filed a response to Fisher's motion for summary judgment. (ECF No. 37).

## ANALYSIS

### *Standard of Review*

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the

absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward *evidence* to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The *evidence* of the non–movant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 139 S.Ct. 69 (2018) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Mere allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). However, verified allegations in an inmate–plaintiff's complaint are deemed competent summary judgment evidence. *See Al–Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). Nevertheless, even verified allegations cannot defeat summary judgment if they are simply "conclusory allegations," "unsubstantiated assertions," or constitute "only a scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

The Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The non–movant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact

3

does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non–moving party." *Hunt*, 730 F. App'x at 212 (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

## *Applicable Law*

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. "Deliberate indifference" to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, an inmate must first demonstrate a serious medical need and then show the defendant acted with deliberate indifference to that need. *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019).[1]

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Id.* (quoting *Gamble*, 429 U.S. at 104). Courts have often described the foregoing as an extremely high or demanding standard. *See id.*; *see also, e.g., Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). An official must know of and disregard an excessive risk to inmate health or safety, i.e., he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Neither negligence (medical malpractice), inadvertence, nor an inmate's disagreement with his or her treatment is enough to state a claim under the Eighth Amendment, i.e., constitutes deliberate indifference. *Gamble*, 429 U.S. at 105–06; *Gibson*, 920 F.3d at 219 (citing *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018)). Rather, the Eighth Amendment proscribes care so unconscionable as to fall below society's minimum standards of decency.

---

[1] The Court assumes without deciding that Fisher establishes a serious medical need.

*Gibson*, 920 F.3d at 219. An inmate seeking relief under the Eighth Amendment must show state officials or employees acted with malicious intent. *Gibson*, 920 F.3d at 219. This has been described as "wanton infliction of pain" or an act "repugnant to the conscience of mankind." *Gamble*, 429 U.S. at 105–06. Thus, courts have held that to succeed on this type of claim, an inmate must show officials or employees "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard" and did so knowing of and disregarding an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gibson*, 920 F.3d at 220. Provision of continuous or regular care generally precludes a finding of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). In other words, when medical records reflect assessment and treatment of a medical complaint, there is no deliberate indifference. *See McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990).

### *Application*

Fisher's deliberate indifference claim arises under the Eighth Amendment's prohibition against cruel and unusual punishment. *See* U.S. CONST. amend. VIII. Fisher claims Dr. Smith was deliberately indifferent to his serious medical needs when he refused to provide him with dentures, asserting that the doctor advised Fisher that he would need to lose weight and be able to walk without a walker to obtain dentures. (ECF No. 1). In response to Fisher's claim, Dr. Smith first contends that to the extent Fisher has sued Dr. Smith in his official capacity for monetary damages, his claim fails as a matter of law because Dr. Smith is entitled to immunity under the Eleventh Amendment. (ECF No. 32). Dr. Smith further contends that if Fisher seeks recovery against him in his individual capacity, the summary judgment evidence establishes a lack of deliberate

indifference because he treated Fisher for his dental issues and placed him on a list for dentures through a pilot program that provided three–dimensional ("3D") dentures for offenders who would otherwise not qualify under TDCJ's dental program. (*Id.*). Dr. Smith contends *he* did not refuse Fisher's request for dentures; rather, that decision was made by others based on protocols for the 3D program and on TDCJ policy relating to provision of dentures. (*Id.*). Dr. Smith argues the lack of deliberate indifference entitles him to qualified immunity if Fisher seeks compensatory damages. (*Id.*). Finally, as to any claim by Fisher for injunctive relief — provision of dentures — Dr. Smith argues he is entitled to summary judgment because he lacks authority to single–handedly provide Fisher with dentures. (*Id.*).

    A.  <u>*Eleventh Amendment Immunity — Official Capacity for Monetary Damages*</u>

The Eleventh Amendment bars suits by private citizens against a state in federal court. *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011); *K.P. v. Leblanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978)); *see* U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Monell*, 436 U.S. at 658, 690 n.55 (1978). The bar of the Eleventh Amendment is in effect when state officials are sued for monetary damages in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Cory v. White*, 457 U.S. 85, 90, (1982). This is so because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Graham*, 473 U.S. at 169 (citation omitted).

Regarding § 1983 claims, the Supreme Court has held a state is not considered a "person" within the meaning of the statute. *Will*, 491 U.S. at 64. Accordingly, although state officials literally are persons, if sued in their official capacities, they are not considered "persons" for purposes of § 1983. *Id.* at 71. In other words, a suit against an official in his or her official capacity is not a suit against the official, but is a suit against the official's office. *Id.*; *Brandon*, 469 U.S. at 471. As a suit against the official's office, it is no different from a suit against the state itself. *Will*, 491 U.S. at 71 (citing *Graham*, 473 U.S. at 165–66; *Monell*, 436 U.S. at 690 n.55). Thus, § 1983 suits brought against state officials in their official capacities for monetary damages or for retrospective relief are, likewise, barred under the Eleventh Amendment. *See id.*

Fisher does not contest Dr. Smith's assertion that he was employed as a dentist at TDCJ's Ney Unit during the relevant time. (ECF Nos. 32, 34, 43). As a TDCJ employee — dentist at TDCJ's Ney Unit — Dr. Smith is an official of the State of Texas. Thus, Fisher's claims against Dr. Smith in his official capacity for monetary damages or other retrospective relief are barred by the Eleventh Amendment, entitling Dr. Smith to summary judgment on such claims. *See Will*, 491 U.S. at 71; *Mayfield v. Dental Dep't*, No. 9:15-CV-90, 2015 WL 13675137, at *2 (E.D. Tex. Nov. 4, 2015) (finding dentist employed by TDCJ prison unit entitled to Eleventh Amendment immunity for claims brought against him in official capacity for monetary damages), *report and recommendation adopted*, 2018 WL 398436 (E.D. Tex. Jan. 11, 2018) *see also* U.S. CONST. amend. XI.

B. *Eleventh Amendment Immunity — Official Capacity for Injunctive Relief*

Besides asking for monetary relief, Fisher also seeks injunctive relief in the form of provision of dentures. (ECF No. 1). Although Dr. Smith is entitled to Eleventh Amendment

immunity in his official capacity for monetary damages, the same is not necessarily true of Fisher's request for injunctive relief. *See Graham*, 473 U.S. 169 (holding that bar of Eleventh Amendment is in effect when state officials are sued for monetary damages in their official capacities).

An exception to Eleventh Amendment immunity applies to claims against state officials for prospective injunctive relief such as Fisher's request for dentures. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908). But, as Dr. Smith points out in his motion for summary judgment, to succeed on a claim for injunctive relief, a plaintiff must establish three elements to show standing: (1) injury in fact, (2) causation, and (3) redressability. (ECF No. 32). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To satisfy the redressability element, a plaintiff must show the official has authority to provide the requested relief. *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001).

In *Floyd v. Johnson*, the court recognized that a Unit dentist lacked authority to provide the inmate-plaintiff with dentures. No. 6:17-CV-00045-RP, 2018 WL 3017123, at *4 (E.D. Tex. June 15, 2018). The court found the only action the Unit dentist could take under TDCJ policy was to refer the inmate-plaintiff for consideration; the decision would be made by those on the reviewing committee. *Id.* Thus, the court concluded the inmate-plaintiff could not show redressability, denying him standing to seek injunctive relief from the Unit dentist in the form of provision of dentures. *Id.* The court granted summary judgment for the Unit dentist. *Id.*

In the present case, Dr. Smith is a Unit dentist employed by TDCJ. (ECF No. 32). The summary judgment evidence shows that as a Unit dentist, he is not in a position to provide or mandate dentures for Dr. Smith in contravention of TDCJ policy. (ECF No. 32, Exhs. C, p. 2, D, p. 162). Like the dentist in *Floyd*, Dr. Smith can do no more than refer an inmate for committee

review, assuming he meets the criteria, (ECF No. 32, Exh. D), or as in this case, to an available pilot program for those that cannot meet TDCJ criteria for dentures, which he did. (ECF No. 32, Exh. C, p. 2). Thus, the Court finds that as a matter of law, Fisher cannot satisfy the redressability requirement in order to obtain prospective injunctive relief for dentures from Dr. Smith. *See Floyd*, 2018 WL 3017123, at *4. Thus, Dr. Smith, in his official capacity, is entitled to summary judgment regarding Fisher's request for injunctive relief.

  C. *Absence of Deliberate Indifference — Individual Capacity*

  Fisher began his pursuit of dentures in 2018; he first saw Dr. Smith, the only named defendant, in 2020 when he put in a sick call request. (ECF Nos. 1, 32, Exhs. B, pp. 145–46, C, p. 1). As noted above, Dr. Smith was the dentist for the Ney Unit where Fisher was confined during the relevant time. (ECF No. 32). At the time he saw Dr. Smith, Fisher was "edentulous," i.e., toothless. (ECF No. 32, Exh. C, p. 1). He complained of gum pain and an inability to eat meat; he requested dentures. (ECF No. 32, Exh. B, p. 146). Dr. Smith advised Fisher he would be placed on the denture list if he was eligible. (*Id.*). According to Dr. Billy Horton, DDS ("Dr. Horton"), who was and is the Dental Director for UTMB/CMC, which provides medical and dental care for TDCJ inmates, the "list" to which Dr. Smith referred was part of a now defunct pilot program to provide 3D printed dentures to edentulous inmates who did not otherwise qualify for dentures under UTMB/CMC policy. (ECF No. 32, Exh. C, pp. 1–2). At the time Dr. Smith first saw Fisher, he and other Unit dentists had been advised about the pilot program and instructed to send the names of potential qualifying inmates to Dr. Horton. (ECF No. 32, Exh. C, p. 2).

  According to Dr. Horton's affidavit and the UTMB/CMC policy for "Dental Prosthodontic Services," which were submitted as summary judgment evidence, inmates are provided dental

9

prosthetics, such as dentures, only when it is considered "medically necessary," which is when the inmate's health would be adversely affected without them. (ECF No. 32, Exhs. C, p. 1, D, p. 162). Dental prosthetics can be medically necessary for those who have nutritional deficiencies because of an inability to chew their food. (ECF No. 32, Exhs. C, p. 1, D, p. 162). But, as noted by Dr. Horton and stated in the UTMB/CMC policy, most foods are "easily digested with minimal mastication." (ECF No. 32, Exhs. C, p. 1, D, p. 162). Moreover, even if nutritional deficiencies are present, inmates are first placed on a special diet to remedy any deficiencies before any decision about dentures is made. (ECF No. 32, Exhs. C, p. 2, D, p. 162).

As applicable to Fisher, whose medical records were reviewed by Dr. Horton, he "maintained a consistent weight since becoming edentulous, and has continued to maintain a constant weight, indicating that his inability to chew was likely not causing nutritional deficiencies that would necessitate providing [Fisher] with dentures." (ECF No. 32, Exh. C, p. 2).[2] Fisher was prescribed a special diet in 2018 after his teeth were originally removed, but he signed a refusal for the diet on July 16, 2019. (*Id.*). According to Dr. Horton, Fisher's weight maintenance and his refusal of an edentulous diet made it "unlikely" that a finding of medical necessity would be made in Fisher's case. (*Id.*). Dr. Horton asserts that this information was conveyed to Fisher before Dr. Smith ever began treating him. (*Id.*). Thus, Dr. Smith's referral of Fisher to the 3D program rather than the regular dental prosthodontic program. (ECF No. 32, Exhs. C, p. 2, D).

---

[2] Fisher's medical records indicate he is 5' 11" tall and his weight ranged during the relevant time from a low of 221 pounds on October 12, 2020, with a Body Mass Index ("BMI") of 31, to a high of 236 pounds on September 8, 2021, with a BMI of 33. (ECF No. 32, Exh. B, pp. 136, 139, 142, 145). Thus, throughout the relevant time, it appears Fisher was gaining weight despite a lack of teeth or dentures. The Centers for Disease Control and Prevention's website states a person of Fisher's height and weight with a BMI of 30 or higher is considered obese. *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Jan. 25, 2023).

Following instructions for the 3D program, Dr. Smith referred Fisher to Dr. Horton. (ECF No. 32, Exh. C, p. 2). Thus, the summary judgment evidence establishes Dr. Smith did not deny Fisher dentures as he claims. (ECF No. 1). Rather, the summary judgment evidence shows Dr. Smith took the only action available given UTMB/CMC policy and Fisher's likely inability to qualify based on "medical necessity." (ECF No. 32, Exh. D, p. 162). Once referred, an inmate's medical records would be reviewed by Dr. Horton to determine whether the inmate was eligible to participate. (ECF No. 32, Exh. C, p. 2). According to Dr. Horton's sworn statement, Unit providers "had no control over whether the [inmate] would be accepted into the pilot program" once they were referred. (*Id.*). Dr. Horton testified that different factors, including inmate restrictions, could affect the inmate's ability to participate. (*Id.*).

The 3D program was conducted at TDCJ's Goree Unit, which required an inmate to travel and remain at the Goree Unit for at least ten days. (*Id.*). If an inmate could not travel and remain at the Goree Unit for at least ten days, he could not participate. (*Id.*). Dr. Horton testified that upon review, he learned Fisher had housing and climbing restrictions in place that made him ineligible for the program. (ECF Nos. 32, Exhs. A, p. 8, C, p. 2). Dr. Horton informed Dr. Smith of Fisher's ineligibility; Dr. Horton advised Fisher that although he had referred him for placement in the 3D pilot program, his current restrictions rendered him ineligible until the restrictions were "changed/lifted." (ECF Nos. 32, Exhs. A, p. 17, B, pp. 142–43, C, p. 2).

In apparent response to Dr. Smith's admonitions, Fisher filed a grievance on November 16, 2020, seeking to have his restrictions removed. (ECF No. 32, Exh. A, pp. 2–3). The medical provider's response to the grievance states that although Fisher first sought to remove his restrictions, he complained of knee pain and changed his mind when advised that removing the

restrictions might cause him to lose his bottom–bunk designation. (ECF No. 32, Exh. A, pp. 3, 7–8). When advised about the consequences of removing his restrictions, Fisher "declined climbing restriction be removed." (ECF No. 32, Exh. A, p. 8).

According to Dr. Horton, the 3D denture program has now been ended and no longer accepts new patients. (ECF No. 32, Exh. C, p. 2). Thus, the only way Fisher can receive dentures is if they are determined to be medically necessary, which Dr. Horton asserts is "unlikely" given Fisher's current nutritional status. (*Id.*).

The Court accepts as true, as it must, Fisher's claims that his gums are causing him pain and he suffers "cuts and abrasions" when he eats. (ECF Nos. 1, 34, 43); *see Darden*, 880 F.3d at 727. However, the summary judgment evidence establishes, and Fisher seemingly agrees, that Dr. Smith, the only defendant against whom Fisher brought this action, was not deliberately indifferent to Fisher's plight nor did he act with malicious intent. (ECF No. 43); *see Gibson*, 920 F.3d at 219. After his first examination of Fisher, Dr. Smith, by procedure, referred him to the 3D denture program, the only program available to Fisher given his inability to otherwise qualify for dentures because of TDCJ policy on dental prosthetics. (ECF Nos. 32, Exhs. A, p. 8, C, p. 2, D, p. 162). In response to a 2021 grievance filed by Fisher against Dr. Smith regarding dentures, which Fisher attached to his Complaint, the TDCJ Practice Manager, Rachel Romine, advised Fisher that he had "been assessed for the Denture Program" and "approved by the Unit Provider," i.e., Dr. Smith. (ECF No. 1). He was also advised that once approved by the Unit Provider, the Unit Provider "has no control over the Denture Program," and it is up to the "Denture Department" to provide services. (*Id.*). He was advised to review the Dental Prosthodontic Service policy. (*Id.*).

Fisher admits in one of his responses to Dr. Smith's motion for summary judgment that Dr. Smith referred him to the 3D denture pilot program and that Dr. Smith was simply following "his supervisor['s] orders." (ECF No. 34). He also admits it was the "Dental Department" and Dr. Horton, not Dr. Smith, who determined he was not qualified under the program. (*Id.*). His complaint against Dr. Smith, as stated in his response, appears to be that Dr. Smith followed his supervisor's orders or that he even referred him in the first place. (*Id.*). Moreover, he specifically admits in his response that Dr. Smith's "allegation" has merit and "tells the whole story," but complains his rights were nevertheless violated. (*Id.*). In sum, Fisher admits that it was the dental or denture department — Dr. Horton — who refused to accept Fisher into the 3D denture pilot program after the referral by Dr. Smith. (*Id.*).

Accordingly, the Court finds the summary judgment establishes Dr. Smith did not refuse to treat Fisher, did not ignore his complaints, did not intentionally mistreat him, nor did he engage in conduct showing a wanton disregard for Fisher, knowing of and disregarding an excessive risk to his health. (ECF Nos. 32, Exhs. C, p. 2, D, p. 162); *see Farmer*, 511 U.S. at 837; *Gibson*, 920 F.3d at 220. Rather, the summary judgment evidence establishes Dr. Smith: (1) provided Fisher with regular care — seeing him on October 12, 2020, October 19, 2020, December 21, 2020, and September 8, 2021— until Fisher signed a refusal to see Dr. Smith in 2022; and (2) referred Fisher to the 3D pilot program after he first examined Fisher. (ECF Nos. 32, Exhs. B, pp. 133–34, 136–38, 139–41, 142–43, 145–46; C, pp. 1–2). The summary judgment evidence further establishes that after the referral, provision of dentures was out of Dr. Smith's hands as he was merely the Unit provider. (ECF Nos. 1, 32, Exh. C, p. 2, 34). The Court finds that in this case Dr. Smith provided regular care as sought by Fisher, including referring Fisher to the 3D denture pilot

program, and from that point, provision of dentures was out of his hands. Accordingly, a finding of deliberate indifference is precluded. *See Banuelos*, 41 F.3d at 235; *see also Pierce v. Thaler*, 577 F. App'x 296, 297 (5th Cir. 2014) (per curiam) (holding that where dentist's summary judgment evidence showed dentist provided treatment to inmate but was precluded by prison policy from furnishing dentures, dentist was not deliberately indifferent to inmates serious medical needs); *Daugherty v. Luong*, 485 F. App'x 696, 696–97 (5th Cir. 2012) (per curiam) (same); *Marquez v. Quarterman*, 652 F. Supp.2d 785, 789 (E.D. Tex. 2009) (finding inmate's claim of deliberate indifference to serious medical needs against dental hygienist should be dismissed as frivolous because she was not involved in denial of dentures but was receptive to request and referred inmate to dentists for denture screening). Because the summary judgment evidence, including Fisher's medical records and Dr. Horton's affidavit, reflect assessment of and responsiveness to Fisher's complaint, just not provision of the treatment he desired, there is no deliberate indifference. *See McCord*, 910 F.2d at 1251 (holding that when medical records reflect assessment and treatment of medical complaint, there is no deliberate indifference); *Gibson*, 920 F.3d at 219 (holding that disagreement with treatment does not constitute deliberate indifference). Dr. Smith's care or lack thereof was not so unconscionable as to fall below society's minimum standards of decency. *Gibson*, 920 F.3d at 219. Thus, the Court finds Dr. Smith is entitled to summary judgment regarding Fisher's Eighth Amendment claim of deliberate indifference to a serious medical need.[3]

---

[3] In *Gregory v. Baucum*, 787 F. App's 206, 210 (5th Cir. 2019), the Fifth Circuit recognized the existence of several opinions that provide persuasive authority that prison officials act reasonably when they provide dental treatment, including soft food diets, instead of dentures.

14

Dr. Smith also contends he is entitled to qualified immunity. (ECF No. 32). When a defendant properly pleads qualified immunity, as Dr. Smith has, the burden shifts to the plaintiff to establish the defendant is not entitled to immunity by showing a violation of an actual constitutional right that was clearly established at the time of the alleged violation. *See Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018); *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). Thus, an assertion of qualified immunity alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 29, 253 (5th Cir. 2010). Despite this shifting burden, a court must still "view the facts in the light most favorable to the nonmovant." *Darden*, 880 F.3d at 727.

The Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The non–movant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018) (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

As discussed above, Dr. Smith has established as a matter of law the absence of an Eighth Amendment violation based on deliberate indifference to a serious medical need. *See, supra*. Fisher did not raise a fact issue negating the absence of deliberate indifference. Therefore, Fisher failed to establish a constitutional violation, and Dr. Smith is entitled to qualified immunity. *See Escobar*, 895 F.3d at 393; *Romero*, 888 F.3d at 176 (holding that to avoid qualified immunity, plaintiff must show violation of constitutional right and right was clearly established at time of

alleged violation). The Court finds Dr. Fisher is entitled to summary judgment based on qualified immunity.

## CONCLUSION

Based on the above, the Court finds Dr. Smith is entitled to summary judgment regarding Fisher's § 1983 claim of deliberate indifference to his serious medical needs. It therefore follows that Fisher's motion for summary judgment should be denied.

**IT THEREFORE ORDERED** that Dr. Smith's Amended Motion for Summary Judgment (ECF No. 32) is **GRANTED** and Fisher's claim against Dr. Smith is **DISMISSED**.

**IT IS FURTHER ORDERED** that Fisher shall take nothing in this cause against Dr. Smith.

**IT IS FURTHER ORDERED** that Fisher's motion for summary judgment (ECF No. 36) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 27th day of January, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE